Filed 1/6/23 P. v. Smith CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078997 |
| v. | (Super.Ct.No. RIF1903448) |
| MARCEL SHA RON SMITH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Matthew C. Perantoni, Judge. Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and respondent.

1

**STATEMENT OF THE CASE**

On December 9, 2020, an information charged defendant and appellant Marcel Sha Ron Smith with robbery under Penal Code[1] section 211 (count 1), and possession of a firearm after having been convicted of a felony and while addicted to a narcotic drug under section 29800, subdivision (a)(1) (count 2). The information also alleged that: (1) in the commission of the robbery, defendant was personally armed with a firearm under section 12022.53, subdivision (b), and section 1192.7, subdivision (c)(8); (2) defendant was ineligible for probation for count 1 pursuant to section 12022.53, subdivision (g); and (3) defendant had been previously convicted of seven serious offenses within the meaning of section 667, subdivision (a), and seven prior strike offenses within the meaning of section 667, subdivisions (c) and (e)(2)(A), and section 1170.12, subdivision (c)(2).

On March 29, 2022, defendant waived his right to a jury trial and requested a court trial. Moreover, the following day, defendant waived his right to a jury determination on all of the sentencing allegations. That same day, midtrial, defendant waived a court trial as to the sentencing allegations and admitted that they were true.

After the prosecution rested, the trial court granted the prosecutor's motion to dismiss six of the seven serious prior felony allegations—allegations two through seven.

---

[1] All further statutory references are to the Penal Code unless otherwise specified

After the presentation of evidence and arguments of counsel, the trial court found defendant guilty of robbery, as charged in count 1, but not guilty of possession of a firearm (count 2). The court also found not true the personal arming allegation on the robbery count.

At sentencing on April 28, 2022, the trial court granted defendant's motion to strike six of his seven prior strike offenses pursuant to *People v. Romero* (1996) 13 Cal.4th 497. The court declined to exercise its discretion to strike the remaining serious felony allegation under section 667.

Thereafter, the trial court sentenced defendant to 11 years in prison, as follows: (1) three years (midterm) for the robbery count, doubled due to defendant's prior strike conviction, for a total of six years; and (2) a five-year consecutive term for the true finding as to the allegation that defendant had suffered a prior serious felony conviction pursuant to section 667. The trial court then waived all non-mandatory fines and fees.

On May 12, 2022, defendant filed a timely notice of appeal.

### FACTUAL AND PROCEDURAL HISTORY

The victim testified at defendant's trial. She stated that on August 20, 2019, she was working at a restaurant in Moreno Valley. The victim testified that around 10:45 p.m. she was taking orders at a cash register when defendant walked in and ordered two tacos. When the victim opened the cash register and asked defendant to pay, he removed a wallet from his pocket and then pointed a gun at her.

Defendant told the victim to give him the money, then pointed the gun at her head. Defendant took about $200 from the cash drawer. The victim described the gun as being black; she stated the gun did not look like a BB gun. After defendant took the money from the cash drawer he left the restaurant, leaving his wallet behind on the counter. Defendant then drove away in a white vehicle.

An audio recording of the victim's 911 call was played for the judge. During the call, the victim told the dispatcher that the restaurant had just been robbed, and the robber had left his identification card at the restaurant. The victim gave the dispatcher a physical description of defendant and read his name from the identification card. During the trial, the victim also identified defendant in the video surveillance footage of the incident, which was played for the trial judge.

On cross-examination, the victim admitted that she did not know if the black gun used by defendant was a BB gun.

The defense called Joseph Felbab as a witness; he was one of the attorneys appointed to represent defendant in the trial court proceedings. Felbab testified that he attempted to obtain video surveillance footage from the date of the incident of defendant purchasing a BB gun at a Big 5 Store. Although Felbab was unable to obtain the video footage, he got a copy of a receipt from the store. The receipt showed that a customer purchased a BB gun, using cash, shortly before the charged events. The store manager testified that he had retrieved the receipt, which showed that the purchase of the BB gun was made at about 7:52 p.m. He described the purchased BB gun as about 5 inches by 4.5 inches and looked like a real firearm.

4

Defendant testified that he was 46 years old and lived most of his life in Los Angeles. As a young adult, he developed a cocaine addiction and began robbing stores to get money to buy cocaine. In 1997, defendant was charged with several counts of robbery. He entered a negotiated plea agreement wherein he received a sentence of 26 years four months in prison. He also admitted to using a firearm.

Defendant went on to testify that during his prior offenses, he engaged in a pattern of obtaining a BB gun from a Big 5 Store and using the BB gun to commit a robbery, and then disposing of the BB gun. Defendant testified that he occasionally used a real gun that he borrowed from a friend; he never fired a gun.

Beginning in 2011, during defendant's prison term, he turned his life around and became a Christian. When defendant was released on parole in 2018, he obtained employment at a Harbor Freight store. However, he began drinking and lapsed into alcoholism. By July 2019, defendant had left his job and worked as a Door Dash driver. About a week before the charged incident, defendant was involved in a traffic accident that caused significant damage to his car. Although defendant was able to make a partial payment for the repairs, he still owed the shop $700. Defendant borrowed his girlfriend's car to continue working as a Door Dash driver. However, the girlfriend's car began to malfunction. A mechanic told defendant that it would cost $4,000 to repair his girlfriend's car. Defendant tried to borrow money from friends and relatives but he was only able to obtain $50.

Defendant admitted that, in a panic, he committed the robbery charged in this case because he needed money to purchase a cheap used car. On the date of the robbery,

5

defendant purchased a BB gun from a Big 5 Store and used it during the robbery. During the robbery, defendant tipped the BB gun down to hide that it was not a real gun. Defendant was so nervous during the robbery that he left his wallet on the counter at the restaurant. His wallet contained about $700 in cash. Defendant got $213 from the robbery.

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its search of the record for error:

"Did the trial court properly overrule [defendant]'s objection to admission of the statements on the 911 tape on grounds that the prosecutor had failed to provide a proper foundation?"

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Id.* at p. 126; *People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
Acting P. J.

We concur:

CODRINGTON_____
J.

FIELDS_____
J.

7